UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES L. LABRADOR,<br><br>Plaintiff,<br><br>v.<br><br>INDUSTRIAL CONTRACTORS'<br>SUPPLIES, INC. and 3M COMPANY,<br><br>Defendants. | No. 13-CV-13029-MLW |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 102 and 106)**

CABELL, U.S.M.J.

Plaintiff Charles Labrador alleges that he was using a "Diamond Glitter Bit" on a die grinder when the bit broke and caused him severe and permanent injury. He has filed a products liability lawsuit against two defendants, 3M Company[1] (3M) as the alleged manufacturer of the bit, and Industrial Contractors' Supplies, Inc. (ICS) as the alleged seller of the bit. The defendants have moved for summary judgment on the amended complaint. Based on the parties' briefs, the evidence submitted

---

[1] 3M is named as a defendant because it is the successor in interest to Victory Diamond Tool Co., the original manufacturer of the brand of bits alleged to have caused the plaintiff's injury.

and the plaintiff's concessions at oral argument, and as discussed below, I recommend that the defendants' motions be granted in part and denied in part.

I. **BACKGROUND**

   A. **Relevant Facts**[2]

The plaintiff, a mason who worked for Chapman Waterproofing, was injured in a workplace accident on September 27, 2010. He was using a die grinder to repoint a brick chimney when the bit in the die grinder broke and penetrated his left hand.

The bit that injured the plaintiff broke and the piece that would have identified its manufacturer has not been recovered. The plaintiff contends that the bit was a 3M diamond glitter bit. In support of this contention he has offered his own testimony that it was a glitter bit, the testimony of an ICS employee who regularly sold 3M bits that the remaining bit fragment is "consistent with" a one quarter inch glitter bit and that ICS only sold 3M glitter bits, and Chapman Waterproofing's purchase records, which show the purchase of 11 3M ¼ x 3 and ½

---

[2] Unless otherwise noted, the facts are presented in a light most favorable to the plaintiff and are taken from the parties' Statements of Material Facts filed in connection with the summary judgment motion. The Court's task of assessing the relevant evidence was made somewhat more challenging by the fact that the plaintiff's Statement of Material Facts contains some 259 facts, the vast majority of which are not material. The plaintiff is reminded that Local Rule 56.1 directs that statements of facts filed in connection with summary judgment motions must be both "concise" and limited to "material" facts.

inch diamond glitter bits prior to the accident. (Dkt. Nos. 104-3 [Ex. 3]; 108-14 [Ex. N]; 121-4 [Ex. 3] at p. 53; 130-1 [Ex. 7] at p. 129).

The plaintiff's expert, Dr. Thomas Eager, is an MIT professor with advanced degrees in Metallurgy. He is prepared to testify that the bit that injured the plaintiff was defective because the bit was not properly cooled during the manufacturing process and, as a result, was too weak for its intended use. This opinion is based upon Eager's visual examination of the bit fragment from the accident and hardness testing on exemplar bits. (Dkt. Nos. 115-21 [Ex. 18]; 115-24 [Ex. 21] at pp. 116, 208). Though a portion of the bit actually involved in the accident was available to the parties, Eager chose not to perform any tests on it.

There is no evidence that ICS was aware of any defects in 3M ¼ x 3 and ½ inch diamond glitter bits before the plaintiff's accident. ICS was aware of one accident involving a diamond glitter bit, but did not have any information about the nature or cause of that accident. Until the plaintiff's accident, ICS had never received a report of an accident involving a ¼ x 3 and ½ inch diamond glitter bit (the size of the bit that injured the plaintiff). (Dkt. Nos. 104-3 [Ex. 3]; 130-1 [Ex. 7] at pp. 114-118).

Neither ICS nor 3M had notice of the plaintiff's products liability claims until they were named as defendants in this action.

### B. Relevant Procedural History

The plaintiff filed his original complaint against ICS on September 9, 2013, in the Barnstable Superior Court for the Commonwealth of Massachusetts. ICS removed the case to federal court. (Dkt. No. 1). On April 1, 2014, the plaintiff filed a motion to amend seeking to add 3M as a defendant. (Dkt. No. 19). On April 2, 2014, the Court granted the motion to amend. (Dkt. No. 20). It is undisputed that 3M became a party to this litigation after the three year statute of limitations had run. (Dkt. No. 37).

The operative amended complaint contains eight counts. (Dkt. No. 22). It contains four counts against ICS, for negligence (count I), breach of express and implied warranties of merchantability and fitness (count II), breach of warranty of fitness for a particular purpose (count III), and willful, wanton, reckless, and/or grossly negligent conduct (count IV). The amended complaint raises the same four claims against 3M in Counts V through VIII. Based upon the allegations in the amended complaint, it appears that the negligence and breach of warranty claims are based upon alternative theories of

4

liability, including design defect, failure to warn and manufacturing defect theories.  (*Id.*)

On June 24, 2014, 3M filed a motion to dismiss Counts V through VIII as barred by the statute of limitations.  The Court denied the motion, finding that under Massachusetts Rule of Civil Procedure 15(c) the amended complaint related back to the original complaint such that it was appropriate to treat the amended complaint as though it had been filed before the expiration of the statute of limitations.  The Court held that 3M had not established that it was prejudiced by the plaintiff's delay in naming it as a party.  (Dkt. No. 62).

### C. The Defendants' Motions

Both defendants have moved for summary judgment on all counts.  The plaintiff has opposed summary judgment on certain counts but conceded it on others.

Specifically, the plaintiff at oral argument conceded that the defendants are entitled to summary judgment on counts III, IV, VII and VIII, that is, the counts alleging breach of warranty of fitness for a particular purpose, and gross negligence.

In addition to his concession, the plaintiff clarified that counts I and V (breach of implied warranty of merchantability) and counts II and VI (negligence) are based solely on the theory that the diamond glitter bit that injured the plaintiff was

5

manufactured defectively.  The plaintiff confirmed that he is not advancing a design defect or failure to warn theory on either count, notwithstanding the fact that he pled those theories in his amended complaint.  The Court therefore limits its analysis to whether the plaintiff is entitled to a trial on his manufacturing defect claims (counts I, II, V and VI).

The defendants argue that they are entitled to judgment as a matter of law on all manufacturing defect claims because: 1) the plaintiff cannot prove that the die grinder bit that caused his injuries was manufactured by 3M or sold by ICS; 2) the plaintiff cannot prove that the bit was defective because his expert did not test the bit actually involved in the accident; 3) the plaintiff did not give the defendants timely notice of his claims, which prejudiced their ability to defend the case; and 4) ICS did not know or have reason to know of any danger from 3M glitter bits before the plaintiff's accident.  (Dkt. Nos. 107 and 132).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment as to any claim, or part of a claim.  FED. R. CIV. P. 56(a).  The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Johnson v. Gordon*, 409 F.3d 12, 16-17 (1st Cir. 2005)(quoting *Garside v. Osco*

*Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing summary judgment may not rest on mere allegations or denials of his pleadings and must produce "definite, competent evidence" on issues for which she bears the ultimate burden of proof. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991); *see also* FED. R. CIV. P. 56(c)(4) (stating that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated).

7

### III. ANALYSIS

The claims that the plaintiff continues to advance are premised on the theory that the bit that injured the plaintiff was defectively manufactured. A manufacturing defect "occurs when a product differs from identical products issued from the same manufacturer." *One Beacon Ins. Co. v. Electrolux*, 436 F. Supp. 2d 291, 294-95 (D. Mass. 2006) (citing *Wasylow v. Glock, Inc.*, 975 F. Supp. 370, 377 (D. Mass. 1996)).

Counts I and V for breach of the implied warranty of merchantability are a "form of strict liability [that] focuses on whether a product is defective." *Chartier v. Brabender Technologie, Inc.*, No. CIV.A. 08-40237-FDS, 2011 WL 4732940, at *9 (D. Mass. Oct. 5, 2011) (citing *Colter v. Barber-Greene Co.*, 403 Mass. 50, 61-62 (1988)). To establish a breach of the implied warranty of merchantability under Massachusetts law, the plaintiff bears the burden of proving "a defect in the product or an unreasonably dangerous condition which existed at the time the product left the defendant's control." *Enrich v. Windmere Corp.*, 416 Mass. 83, 89 (1993) (citing *Colter*, 403 Mass. at 62).

In contrast, Counts II and VI, the negligence claims, "[f]ocus[] on the conduct of the defendant." *One Beacon Ins. Co.*, 436 F. Supp. 2d at 294-95. The plaintiff must show that "the product's manufacturer or seller has failed to use

8

reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of harm." *Id*.

It follows from the elements of each type of claim that the defendants may be found liable for breach of the warranty of merchantability without having acted negligently. *Colter*, 403 Mass. at 62. However, the defendants "cannot be found to have been negligent without having breached the warranty of merchantability." *Id*.

### A. A Triable Issue Exists As To The Identification Of The Bit That Caused The Plaintiff's Injuries

A threshold issue for both claims is the identity of the bit that injured the plaintiff. Under Massachusetts products liability law, the plaintiff has the burden of establishing that the defendants "manufactured or sold the product that injured him." *Al-Yasiri v. TMB Baking et al*, 166 F. Supp. 3d 118, 122 (D. Mass. 2016) (citing *Fireman Fund Ins. Co. v. Bradford-White Corp.*, No. 12-10509-NMG, 2014 WL 1515266 (D. Mass. Apr. 15, 2014)). The defendants argue that because the piece of the bit that identified the manufacturer has been lost, the plaintiff cannot prove that the bit was a 3M diamond glitter bit.

It is true that if the bit bore the 3M name, there would be sufficient evidence to go to the jury on the identification issue. *Wasylow*, 975 F. Supp. at 377. But the inverse is not true; the absence of a brand name on the bit does not compel

9

summary judgment in the defendants' favor.  In the absence of direct evidence of the bit's manufacturer, the Court considers whether there is "sufficient circumstantial evidence from which" a jury could "reasonably infer[]" that the bit in question is a 3M bit.  *Al-Yaseri*, 166 F. Supp. 3d at 122.

In the Court's view, the plaintiff has, even if not by much, marshalled enough evidence to create a triable issue as to the identity of the bit that injured him.  The plaintiff has his own testimony as to the bit he was using at the time of the accident, the testimony of Theodore Siegel, Jr., an ICS employee who regularly sold 3M glitter bits, that the remaining bit fragment is "consistent with" a one quarter inch glitter bit and that the only glitter bits that ICS sold were 3M glitter bits, and the purchase records of his employer, Chapman Waterproofing, which show the purchase of 11 3M diamond glitter bits prior to the accident.

*Chapman ex rel. Estate of Chapman v. Bernard's Inc.*, 167 F. Supp. 2d 406 (D. Mass. 2001), is analogous.  In that case, the plaintiff contended that a certain Bernard's daybed caused her son's death.  The boy's father had destroyed the bed in a fit of grief, leaving the plaintiff with only photographs, the inconsistent testimony of two witnesses as to where the bed was purchased, and the testimony of a furniture store employee that no other daybed sold at the store looked like the one in the

10

photos.  *Chapman ex. rel Estate of Chapman*, 167 F. Supp. 2d at 412-413.  Despite the fact that proof of product identity would be difficult, the court found that the plaintiff had "provided sufficient evidence to create a genuine issue of material fact with respect to product identity and thereby clear the summary judgment hurdle."  *Id*. at 412. *Compare Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322, 323 (1995) (affirming summary judgment in favor of defendants where the plaintiff was injured by one of three brands of hockey sticks used in gym class and the gym teacher who offered the only testimony regarding identity could only "guess" as to which sticks were in use at the time of the accident).

Here, as in *Chapman*, the loss of relevant evidence makes the plaintiff's task of identifying the bit more difficult, but it does not render it impossible.  The defendants are correct that the plaintiff faces an uphill battle to prove that the defendants manufactured and sold the bit – especially given what the defendants are prepared to contend are inconsistencies in the plaintiff's testimony, and his failure to test the bit fragment.  Nonetheless, a reasonable jury could find that the plaintiff's evidence is credible and, if so, conclude that the bit that injured the plaintiff was a 3M diamond glitter bit.

## B. A Triable Issue Exists As To Whether The Bit That Caused The Plaintiff's Injuries Was Defective

The defendants next argue that the plaintiff cannot prove that the bit was defective because the plaintiff's expert failed to test the actual bit that injured the plaintiff and instead tested other "exemplar" bits. At first blush, the defendants' argument is appealing because the essence of a manufacturing defect claim is that the product that caused an injury differed from others like it. The plaintiff must prove that the bit that injured him "deviat[ed] in its construction or quality from specification or planned output in a manner that render[ed] it unreasonably dangerous." *Lapesa v. Arrow Int'l., Inc.*, No. 07cv12370-NG, 2009 WL 5217030, *3 (D. Mass. Dec. 23, 2009). However, the defendants have not cited and the Court has not been able to locate any cases requiring any specific type of testing on an allegedly defective product to establish that it was defective.

Rather, what is required is competent expert testimony to establish the nature of the defect. *Enrich v. Windmere Co.*, 416 Mass. 83, 87 (1993). Given that the use and performance of die grinder bits used in masonry projects is outside the knowledge of lay jurors, the plaintiff cannot rely on lay testimony to prove that the bit was defective. *Lapesa*, 2009 WL 5217030, at *4 (explaining distinction between case involving defective

12

sandal where no expert testimony was required and case involving defective printing press where expert testimony was required).

The plaintiff must introduce evidence to establish the factual basis for the expert's opinion, *Hayes v. Douglas Dynamics*, 8 F.3d 88, 93 (1st Cir. 1993) (testimony of accident reconstruction expert insufficient to establish defective plow was cause of accident where no evidence was introduced to show that the cars involved in the accident were in the same position as those in the reconstruction), and the expert's opinion as to the nature of the defect must rise above the level of speculation.  *One Beacon Ins. Co.*, 436 F. Supp. 2d at 295; *Goffredo v. Mercedez-Benz Truck Co.*, 402 Mass. 97, 103 (1988). The "plaintiff need not prove the exact cause of the accident or disprove every possible cause . . . ," but he must show that it is more likely than not that a product defect was the cause of the accident.  *One Beacon Ins. Co.,* 436 F. Supp. 2d at 295 (denying summary judgment on negligence and breach of warranty claims where expert could not determine exact cause of clothes dryer fire because key components of the dryer were missing, but did opine about the cause of the fire based upon an inspection of the remaining dryer components).  Failure to test the allegedly defective product itself is not necessarily fatal to a plaintiff's claim.  For example, expert testimony as to the proper functioning of a product in general and the likelihood

13

that it would break if properly manufactured might be sufficient to allow the jury to conclude that the product that allegedly caused the plaintiff's injury did not function properly and therefore was defective. *Lapesa*, 2009 WL 5217030, at *6 (granting summary judgment in favor of defendant where plaintiff failed to introduce expert testimony to establish catheter was defective and noting in dicta that the plaintiff should have introduced expert testimony regarding the proper functioning of catheters and the likelihood they would break).

Here, the plaintiff's expert, Dr. Thomas Eager, is prepared to testify that the bit that injured the plaintiff was defective because the bit was not properly cooled during the manufacturing process, resulting in a weaker than intended bit. This opinion is based upon Eager's visual examination of the grinder and bit fragment from the accident, and hardness testing on exemplar bits. In the Court's view, this testimony, while perhaps not overwhelming, is sufficient to raise a triable issue of fact as to whether the bit that injured the plaintiff was defectively manufactured. At trial, the defendants can certainly raise Eager's failure to perform tests on the actual bit fragment, but it will be for the jury to decide whether to discredit Eager's opinion on that basis.

### C. A Triable Issue Remains Regarding Whether The Defendants Were Prejudiced By The Plaintiff's Delay In Giving Notice Of His Claim

The defendants also argue that the claims against them should be dismissed because the plaintiff failed to give them timely notice. *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 448-49 (1st Cir. 1997) (the plaintiff's failure to give timely notice of breach of warranty claim is an affirmative defense to claim where defendant can establish that delay resulted in prejudice). ICS did not learn of the plaintiff's claims until it was served with the original complaint in this case, nearly three years after the accident. 3M had to wait even longer because it was added as a party when the plaintiff amended his complaint in 2014. The defendants argue that they were prejudiced by the delay because they were denied the opportunity to examine the die grinder involved in the accident and to speak to witnesses while their memories were fresh. (Dkt. No. 134).

The first difficulty with this argument is that it was already rejected by the district judge when 3M raised it in connection with its motion to dismiss. Neither party has provided any new evidence that would make it appropriate for the Court to revisit that prior ruling now.

In any event, the defendants have the burden of proving that they suffered prejudice as a result of the plaintiff's

15

delay. *Sacramona*, 106 F.3d at 449. The defendants argue that the loss of "material evidence usually establishes prejudice," *Maga v. Hennessy Indus., Inc.*, No. 12-11423-FDS, 2014 WL 10051399, *17 (D. Mass. Dec. 1, 2014), but it is not clear that the lost die grinder is material, and the parties have offered competing expert testimony on the importance (or lack thereof) of inspecting the die grinder to determine the cause of the accident. Moreover, the die grinder appears to have gone missing early on, which means that it is very possible that the defendants would not have had been able to examine the die grinder even had notice been provided earlier. For all of these reasons, it may be most appropriate to let a jury decide whether either defendant has been prejudiced by the timing of the plaintiff's notice. Because the defendants' evidence does not compel the conclusion that they suffered prejudice, the Court concludes that the issue should go to the jury.

### D. **There Is No Evidence That ICS Knew Or Had Reason To Know Of Any Defect In The Bit That Injured the Plaintiff**

Finally, ICS argues that it is entitled to summary judgment on the negligence claim (count I) because there is no evidence that it knew or had reason to know of the allegedly dangerous condition of the bit that injured the plaintiff. In order to prevail on his negligence claim against ICS, the plaintiff must show that ICS "failed to use reasonable care to eliminate

16

foreseeable dangers" in the allegedly defective bit. *One Beacon Ins. Co.*, 436 F. Supp. 2d at 294-95. Because ICS is the seller of the bit, rather than its manufacturer, the plaintiff must introduce evidence that ICS "knew or had reason to know of the dangerous condition that caused the accident." *Enrich*, 416 Mass. at 86. The plaintiff has not done so.

ICS has submitted evidence that -- with the exception of the plaintiff's accident – it has never received a report of an accident involving a ¼ x 3 and ½ inch diamond glitter bit. (Dkt. No. 104-3 [Ex. 3]). The only evidence that the plaintiff has proffered to support its contention that ICS did have notice of the alleged defect is the deposition testimony of Theodore Siegel, Jr. of ICS. Siegel testified that before the plaintiff's accident, Siegel was aware of one other accident involving a 3M glitter bit. Siegel testified that the only information he received about the prior accident was that it had occurred. There is no evidence to suggest that the accident stemmed from a defect in the glitter bit (as opposed to user error, for example). Accordingly, there is no basis for a reasonable jury to conclude that ICS's knowledge of the prior accident should have put it on notice regarding potential defects in 3M glitter bits, let alone a glitter bit with the dimensions at issue here. (Dkt. No. 130-1 [Ex. 7] at pp. 114-

17

118). Summary judgment in ICS's favor on the negligence count (count I) is appropriate.

**IV. CONCLUSION**

For the foregoing reasons, it is recommended that the motions for summary judgment be granted in part and denied in part. Summary judgment should be GRANTED, in part, with respect to count II (breach of implied warranty against ICS), count V (negligence against 3M), and count VI (breach of implied warranty against 3M); the plaintiff should be allowed to proceed on those counts only to the extent they are based upon a manufacturing defect theory. Summary judgment should be GRANTED on counts I, III, IV, VII and VIII, in their entirety. The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.

*See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell  
DONALD L. CABELL, U.S.M.J.

DATED:  February 10, 2017